## IN UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| HOMEVESTORS OF AMERICA, INC., §<br>§<br>    Plaintiff, §<br>§<br>§<br>    vs. §<br>§<br>RIDGELINE INVESTMENTS LLC, a §<br>Missouri Limited Liability, JARED S. §<br>PETERSON, an Individual; and IBUYKC §<br>LLC, §<br>§<br>    Defendants. § | Civil Action No.  3:26-cv-02240<br><br>Jury Trial Demanded |

### PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

### INTRODUCTION

1.      This action arises from Defendants' willful and ongoing violations of post-termination obligations under a HomeVestors of America, Inc. franchise agreement. Defendant Jared S. Peterson, while serving as a franchisee of Plaintiff HomeVestors of America, Inc. ("HVA"), formed and continues to operate a competing real estate investment business, iBuyKC LLC, doing business as iBuy KC, in direct violation of binding contractual covenants not to compete, prohibitions on the use of HVA's Licensed Marks, and other post-termination obligations. Despite receiving two cease-and-desist letters, Defendants have not substantively responded and have not ceased their unlawful activities. HVA brings this action for injunctive relief, damages, and other relief.

### PARTIES

2.      Plaintiff HomeVestors of America, Inc. ("HVA") is a Delaware corporation with its principal place of business at 14785 Preston Road, Suite 750, Dallas, Texas 75254. HVA is the franchisor of a national system for the buying, rehabilitating, and selling of

residential and commercial real properties under its licensed trademarks, including the federally registered mark HOMEVESTORS® and the mark WE BUY UGLY HOUSES®.

3. Defendant Ridgeline Investments LLC ("Ridgeline") is a Missouri limited liability company. Ridgeline was formerly a HomeVestors franchisee operating in the Kansas City, Missouri metropolitan area under the Franchise Agreement described herein. Upon information and belief, Ridgeline and/or Peterson formed iBuyKC LLC and registered the fictitious name "iBuy KC" with the Missouri Secretary of State on or about February 2, 2026, while still a franchisee of HVA. Ridgeline may be served through its registered agent or through its managing member, Jared S. Peterson, at 1212 Northwest State Route 7, Blue Springs, Missouri 64014.

4. Defendant Jared S. Peterson ("Peterson") is an individual who may be served at his residence at 1212 Northwest State Route 7, Blue Springs, Missouri 64014. Peterson owned 100% of the membership interests of JP REI, LLC, which in turn owned 100% of the membership interests of Ridgeline Investments LLC. Peterson was the managing member of both JP REI, LLC and Ridgeline Investments LLC and is the managing owner and controlling person of Ridgeline. Peterson personally guaranteed the obligations of Ridgeline under the Franchise Agreement and its ancillary documents, and acknowledged and reaffirmed his post-termination obligations in connection with the February 27, 2026 transfer of the franchise. Peterson owns, controls, and/or operates iBuyKC LLC, doing business as iBuy KC.

5. Defendant iBuyKC LLC is a Missouri limited liability company, organized on March 7, 2024, with charter number LC014532324, with its current registered office address at 10513 Kenwood Ave, Kansas City, Missouri 64131. iBuyKC LLC does business

as "iBuy KC" and operates a competitive real estate investment business in the Kansas City, Missouri metropolitan area in direct violation of the post-termination covenants binding on Ridgeline and Peterson. iBuyKC LLC was formed by Ridgeline and/or Peterson while Peterson was actively serving as a franchisee of HVA, in violation of the in-term covenant not to compete. iBuyKC LLC may be served through its registered agent or through its managing member, Jared S. Peterson, at 1212 Northwest State Route 7, Blue Springs, Missouri 64014.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because this action arises in part under the Lanham Act, 15 U.S.C. § 1051 et seq., including claims arising under 15 U.S.C. §§ 1114 and 1125(a) and (c).

7.      This Court additionally has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship) because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff HVA is a Delaware corporation with its principal place of business in Texas, while Defendants are citizens of Missouri.

8.      This Court has supplemental jurisdiction over all state law and contractual claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

9.      Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) and the express terms of the Franchise Agreement, including Section 21(I) thereof, which provides that all actions arising under the Franchise Agreement shall be commenced in a Texas state court, Dallas County, Texas, or the United States District Court for the Northern District of Texas, Dallas Division, and that all parties irrevocably submit to the

jurisdiction of those courts and waive any objection to jurisdiction or venue. Peterson and Ridgeline executed the Franchise Agreement, Guaranty and Assumption of Obligations, and Transfer and Consent Agreement, each of which contains Texas forum selection and consent to jurisdiction provisions.

10.    Additionally, venue is proper pursuant to the express terms of the Guaranty and Assumption of Obligations executed by JP REI, LLC and Jared S. Peterson personally, which provides for enforcement in Dallas County, Texas, or the United States District Court for the Northern District of Texas, Dallas Division.

11.    Further, venue is proper pursuant to Section 17 of the Transfer and Consent Agreement dated February 27, 2026, which provides that all litigation pertaining to or arising from that Agreement shall be brought in a court of competent jurisdiction within the State of Texas, and all parties waived defenses of personal jurisdiction and venue.

## FACTUAL BACKGROUND

**A.    HVA's Franchise System and Licensed Marks**

12.    HVA operates a national franchise system (the "System") for the establishment and operation of businesses that purchase and resell residential and commercial real properties, provide certain mortgage services, and offer related services to property buyers and sellers (the "HomeVestors Business"). HVA licenses its System to franchisees throughout the United States.

13.    The System is identified by certain federally registered trade names, service marks, trademarks, logos, and indicia of origin, including without limitation the mark HOMEVESTORS® and the mark WE BUY UGLY HOUSES® (collectively, the "Licensed Marks"). The Licensed Marks have acquired substantial goodwill and are

recognized by consumers throughout the United States as identifying HVA's System and its franchisees.

14.    HVA's System includes proprietary operating systems and standards, technology and software, confidential trade secrets, marketing programs, customer lead generation and distribution systems, and training programs. HVA's franchisees invest in the System and receive training and access to HVA's confidential information and proprietary methods.

**B.     The Franchise Agreement**

15.    On April 7, 2022, HVA entered into a Franchise Agreement (the "Agreement") with Carl Bassett for the operation of a HomeVestors franchise in a Territory consisting of: Douglas, Johnson, Leavenworth, Miami, and Wyandotte Counties, Kansas, and Cass, Clay, Clinton, Jackson, Johnson, Lafayette, Platte, and Ray Counties, Missouri (the "Territory"). The Territory encompasses the Kansas City, Missouri metropolitan area, in which HVA currently has multiple active franchisees. A true and correct copy of the Agreement is attached hereto as Exhibit A.

16.    On May 12, 2022, HVA consented to the transfer of the Agreement from Carl Bassett to Ridgeline Investments LLC pursuant to a Transfer and Consent Agreement. Carl Bassett, as the original guarantor, acknowledged that his post-termination obligations survived the transfer. A true and correct copy of the May 12, 2022 Transfer and Consent Agreement is attached hereto as Exhibit B.

17.    On March 17, 2023, HVA consented to Carl Bassett's sale of 49% of his ownership interest in Ridgeline to Jared S. Peterson pursuant to an Assignment, Consent and Release Agreement. In connection with that transaction, Peterson personally executed a Guaranty and Assumption of Obligations in which he personally and unconditionally

5

guaranteed all of Ridgeline's obligations under the Agreement, including without limitation compliance with in-term and post-term noncompetition covenants and protection of Confidential Information. Peterson thus became personally bound by all obligations under the Agreement. A true and correct copy of the March 17, 2023 Assignment, Consent and Release Agreement and Guaranty is attached hereto as Exhibit C.

18.     On January 28, 2026, HVA consented to Carl Bassett's sale of his remaining 51% ownership interest in Ridgeline to JP REI, LLC, a Missouri limited liability company of which Peterson is the 100% owner and managing member, pursuant to a second Assignment, Consent and Release Agreement. In connection with that transaction, both Peterson individually and JP REI, LLC executed a Guaranty and Assumption of Obligations, reaffirming personal and joint and several liability for all obligations under the Agreement, including post-termination noncompetition covenants. Following this transfer, Peterson held 100% indirect control of Ridgeline through JP REI, LLC and served as its managing member. A true and correct copy of the January 28, 2026 Assignment, Consent and Release Agreement and Guaranty is attached hereto as Exhibit D.

**C.     Peterson's Formation of a Competitive Business During the Franchise Term**

19.     On or about March 7, 2024, while Peterson was a 49% owner and co-manager of Ridgeline -- and thus an active franchisee of HVA -- Peterson caused the formation of iBuyKC LLC, a Missouri limited liability company, with the Missouri Secretary of State. iBuyKC LLC was organized for the stated purpose of "real estate investment and any other lawful purpose" -- a purpose that falls squarely within the definition of "Competitive Business" under the Agreement. A true and correct copy of the Articles of Organization of iBuyKC LLC, filed with the Missouri Secretary of State on March 7, 2024, is attached hereto as Exhibit E.

20. The formation of iBuyKC LLC during the term of the Agreement, while Peterson was an active franchisee of HVA, constituted a violation of the in-term covenant not to compete set forth in Section 10(B) of the Agreement, which prohibits franchisees and their owners from having any direct or indirect interest as a disclosed or beneficial owner in a Competitive Business.

21. On or about February 2, 2026, Ridgeline registered the fictitious name "iBuy KC" with the Missouri Secretary of State, associating that trade name with iBuyKC LLC's operations. This registration occurred while Ridgeline was still a franchisee of HVA, constituting a further violation of the in-term covenant not to compete and Section 8 of the Agreement governing Licensed Marks. The Missouri Secretary of State records for iBuyKC LLC, including the April 2, 2026 Statement of Change of Registered Agent Office Address reflecting charter number LC014532324, are attached hereto as Exhibit F.

**D.    The Transfer of the Franchise and Peterson's Post-Termination Obligations**

22. On February 23, 2026, Ridgeline entered into a Buy-Sell Agreement with Edge Property Acquisitions LLC ("Edge") for the sale of the franchise for a purchase price of $45,000. A true and correct copy of the February 23, 2026 Buy-Sell Agreement is attached hereto as Exhibit G.

23. On February 27, 2026, HVA, Ridgeline, Peterson (as "Outgoing Owner"), and Edge executed a Transfer and Consent Agreement (the "Transfer Agreement") pursuant to which HVA consented to the transfer of the Franchised Business from Ridgeline to Edge Property Acquisitions Inc. The Agreement terminated upon execution of the New Franchise Agreement by Edge. A true and correct copy of the February 27, 2026 Transfer and Consent Agreement is attached hereto as Exhibit H.

24.    Pursuant to Section 6 of the Transfer Agreement, Peterson and Ridgeline expressly acknowledged and agreed that they "shall continue to be responsible for all of his obligations to Franchisor arising under the Original Franchise Agreement and Original Guaranty prior to the termination of the Original Franchise Agreement and for all other obligations that survive the termination of the Original Franchise Agreement, which obligations include, without limitation and by agreement of the parties hereto, the covenants against nondisclosure of confidential information and noncompetition covenants, indemnification, obligations upon termination and dispute resolution."

25.    The post-termination obligations now binding on Defendants include, without limitation:

(a)    Section 10(C)(a): For a period of two continuous years from February 27, 2026 (through at least February 27, 2028), neither Ridgeline, Peterson, nor any entity they own or control may own, maintain, operate, engage in, or have any financial or beneficial interest in any Competitive Business operating within the Territory, or within counties adjacent to the Territory, or within a Territory then operated by or under development by HVA or another HVA franchisee.

(b)    Section 10(C)(b): Defendants are prohibited from diverting or attempting to divert, directly or indirectly, any business, business opportunity, or customer of the HomeVestors Business to any Competitive Business.

(c)     Section 10(C)(d): Defendants are prohibited from making any disparaging remarks or taking any action that could cause loss or damage to HVA's business, reputation, or goodwill.

(d)     Section 10(C)(e): Defendants are prohibited from bidding on any of HVA's Licensed Marks as "exact match," "broad match," or "phrase match" search terms in any keyword advertising, and must list each Licensed Mark as a negative keyword in all keyword advertising campaigns.

(e)     Section 19(C)(1): Defendants may not, directly or indirectly, at any time or in any manner, identify themselves or any business as a current or former HomeVestors Business or as one of HVA's franchisees, use any Licensed Mark, any colorable imitation thereof, or other indicia of a HomeVestors Business in any manner or for any purpose, or utilize any trade name, trademark, or other commercial symbol that suggests or indicates a connection or association with HVA.

26.     The Agreement further provides at Section 10(C): "If any person restricted by this Subsection C refuses voluntarily to comply with the foregoing obligations, the two year period will commence with the entry of the order of an arbitrator or court enforcing this provision." Defendants' refusal to comply thus subjects them to a potentially indefinite tolling of the non-compete period.

**E.     Defendants' Ongoing Violations of Post-Termination Obligations**

27.     Notwithstanding their binding contractual obligations, Defendants have continued to operate iBuyKC LLC, doing business as iBuy KC, as a Competitive Business within the Territory and adjacent counties following the February 27, 2026 termination of

9

the Agreement. iBuyKC LLC's operations – purchasing residential real properties for rehabilitation and resale for profit in the Kansas City metropolitan area – fall squarely within the definition of "Competitive Business" under Section 10(B) of the Agreement.

28.    Defendants advertise and operate iBuy KC through its website, https://ibuykc.com (the "Website"). The Website markets iBuy KC's property buying services to homeowners throughout the Kansas City metropolitan area, which is within and immediately adjacent to the Territory covered by the Agreement.

29.    On its Website, iBuy KC advertises that it has been providing "win-win solutions" to Kansas City homeowners "for years" and that it is "Trusted by Kansas City Homeowners Since 2019." These statements improperly capitalize on, and constitute a use of, the goodwill, tenure, reputation, and customer relationships that Peterson and Ridgeline built while operating as HVA franchisees under HVA's Licensed Marks, System, and training in direct violation of Section 19(C)(1) of the Agreement. A true and correct screenshot of https://ibuykc.com/about-us/ taken on June 29, 2026, three (3) weeks after HVA sent its initial cease and desist letter and four (4) days after HVA's counsel sent the second cease and desist letter, is attached hereto as Exhibit I.

30.    A publicly available Google review, Peterson or his agent identified iBuy KC as "formerly HomeVestors," in direct and explicit violation of Section 19(C)(1) of the Agreement, which expressly prohibits any former franchisee from identifying themselves or their business as a current or former HomeVestors Business or franchisee. This constitutes unauthorized use of, and an explicit reference to, HVA's Licensed Marks and creates a false and misleading association between iBuy KC and HVA's System.

31. Peterson called into HVA's buy line and submitted a false property lead, causing HVA actual monetary damages in the form of losses from its advertising budget. This conduct was deliberate and willful, and was designed to interfere with and damage HVA's franchisee operations in the Territory.

32. HVA has reason to believe that Defendants have purchased HVA's registered trademarks as keyword search terms for internet search engine advertising, in violation of Section 10(C)(e) of the Agreement.

33. HVA currently has multiple active franchisees operating within the Territory. Defendants' operation of iBuy KC in the Territory diverts business, business opportunities, and customers from HVA's active franchisees, causing ongoing and irreparable harm to HVA and its franchisees.

**F.      Defendants' Failure to Comply with Cease-and-Desist Demands**

34. On June 5, 2026, HVA's General Counsel, Michael Waldron, sent Peterson a cease-and-desist letter via certified mail and email, demanding that Peterson immediately cease all activities in violation of his post-termination obligations and provide written confirmation of compliance within five days. The deadline passed without any response from Peterson and without any change in Defendants' conduct. A true and correct copy of the June 5, 2026 cease-and-desist letter is attached hereto as Exhibit J.

35. On June 25, 2026, HVA's counsel sent a second cease-and-desist letter to Peterson via certified mail and email, reiterating all demands and providing a final deadline of June 30, 2026, for written confirmation of full compliance. As of the date of this filing, Defendants have not substantively responded to either letter, have not ceased their competitive activities, and iBuy KC continues to operate and advertise in violation of

Defendants' post-termination obligations. A true and correct copy of the June 25, 2026 cease-and-desist letter is attached hereto as Exhibit K.

36.    Defendants' failure to substantively respond to either cease-and-desist letter, and their continued operation of iBuy KC in violation of binding contractual obligations, is willful and deliberate.

## CAUSES OF ACTION

## COUNT I - FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

### Against All Defendants

37.    HVA realleges and incorporates by reference all preceding paragraphs.

38.    HVA is the owner of valid and incontestable federal trademark registrations for the marks HOMEVESTORS® and WE BUY UGLY HOUSES®, which are registered on the Principal Register of the United States Patent and Trademark Office.

39.    Defendants, after the termination of the Agreement, have used and continue to use HVA's Licensed Marks, or colorable imitations thereof, in commerce in connection with the advertising and promotion of iBuy KC, including by identifying iBuy KC as "formerly HomeVestors" in a publicly available Google review, and by referencing on the Website the tenure and goodwill built under HVA's marks.

40.    Defendants' unauthorized use of HVA's Licensed Marks is likely to cause confusion, mistake, and deception among consumers as to the source, sponsorship, affiliation, or approval of iBuy KC's services, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

41.    Defendants' infringement is willful and in bad faith, as Defendants are former franchisees of HVA who were expressly prohibited by contract from using HVA's

Licensed Marks after termination and who have actual knowledge of HVA's trademark rights.

42.    As a direct and proximate result of Defendants' infringement, HVA has suffered and continues to suffer irreparable harm.

## COUNT II - FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION (15 U.S.C. § 1125(a))

### Against All Defendants

43.    HVA realleges and incorporates by reference all preceding paragraphs.

44.    Defendants' use of HVA's Licensed Marks and the goodwill associated therewith in connection with the promotion of iBuy KC constitutes a false designation of origin, false description, and false representation that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of iBuy KC with HVA, and as to the origin, sponsorship, or approval of iBuy KC's services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45.    The "formerly HomeVestors" identification and the Website's references to years of service built under HVA's marks constitute false and misleading descriptions and representations of fact in commercial advertising that misrepresent the nature, characteristics, and origin of iBuy KC's services.

46.    As a direct and proximate result, HVA has suffered and continues to suffer irreparable harm and damages.

## COUNT III - BREACH OF CONTRACT (POST-TERM COVENANT NOT TO COMPETE AND MISAPPROPRIATION OF CONFIDENTIAL INFORMATION -- SECTIONS 10(A), 10(C)(a), AND 19(D))

### Against All Defendants

47.    HVA realleges and incorporates by reference all preceding paragraphs.

13

48.    The Agreement, including the Guaranty and Assumption of Obligations executed by Peterson personally and by JP REI, LLC, and as reaffirmed by Section 6 of the Transfer and Consent Agreement, constitutes a valid, binding, and enforceable contract between HVA and Defendants.

49.    Section 10(C)(a) of the Agreement prohibits Defendants from owning, maintaining, operating, engaging in, or having any financial or beneficial interest in, advising, assisting, or making loans to any Competitive Business operating within the Territory, adjacent counties, or any territory then operated by or under development by HVA or its franchisees, for a period of two years following termination of the Agreement.

50.    Section 10(A) of the Agreement defines HVA's "Confidential Information" to include, without limitation: (i) methods, systems, specifications, standards, procedures, and purchasing, financing, selling and marketing techniques; (ii) marketing programs for HomeVestors Businesses; (iii) knowledge of the operating results and financial performance of HomeVestors Businesses; and (iv) customer lists, leads, prospects and referral sources. Pursuant to Section 10(A), Defendants acknowledged and agreed that they would not use any Confidential Information in any other business or capacity, would maintain the absolute confidentiality of the Confidential Information during and after the term of the Agreement, and that the use or duplication of any Confidential Information in any other business would constitute an unfair method of competition.

51.    Section 19(D) of the Agreement further provides that, upon termination or expiration of the Agreement, Defendants must immediately cease to use any of HVA's Confidential Information in any business or otherwise, and must return to HVA all copies of the Manual, training materials, the Programs, information downloaded from HVA's

website, and any other confidential materials loaned to or otherwise acquired by Defendants.

52.     The Guaranty and Assumption of Obligations executed by Peterson personally and by JP REI, LLC expressly incorporates and requires compliance with Section 10 of the Agreement in its entirety, including without limitation the confidentiality obligations of Section 10(A) and the post-term restrictions of Section 10(C). The Ancillary Covenants Not to Compete (Attachment 5 to the Agreement) similarly prohibit Defendants from using, disclosing, or duplicating any of HVA's Trade Secrets or Confidential Information in connection with any Competitive Business.

53.     Defendants have breached and continue to breach Section 10(C)(a) by owning, operating, and engaging in iBuyKC LLC, d/b/a iBuy KC, a Competitive Business operating within and adjacent to the Territory.

54.     Defendants have further breached and continue to breach Sections 10(A) and 19(D) of the Agreement by using HVA's Confidential Information -- including without limitation customer lists, lead data, prospect information, and referral sources generated through and owned by HVA pursuant to Sections 10(A) and 14(D) of the Agreement, as well as proprietary marketing techniques, valuation methodologies (including ValueChek), and operational know-how acquired through HVA's System -- in the operation and promotion of iBuyKC LLC, d/b/a iBuy KC. Upon information and belief, Defendants have used and continue to use such Confidential Information to solicit HVA's former and current customers, to target leads within the Territory, and to operate a Competitive Business that directly competes with HVA and its active franchisees in the Territory using the very

confidential information and trade secrets that Defendants obtained exclusively through their operation of the HomeVestors franchise.

55.     The Buy-Sell Agreement between Ridgeline and Edge, dated February 23, 2026, purported to transfer to Edge all "leads, prospects, inquiries, and customer records" accumulated by Ridgeline during the franchise term. All such leads, customer records, and prospect data were and remain the exclusive property of HVA pursuant to Section 14(D) of the Franchise Agreement, which expressly provides that "[a]ll data that you collect, create, provide or otherwise develop (including customer information) is and will be owned exclusively by us." Defendants' purported retention and/or use of such customer data in connection with iBuyKC LLC's operations – whether directly by Peterson, through Ridgeline, or through iBuyKC LLC – constitutes an additional and independent breach of Sections 10(A) and 14(D) of the Agreement.

56.     As a direct and proximate result of Defendants' breach of Section 10(C)(a), HVA has suffered and continues to suffer damages, including but not limited to lost business opportunities, lost revenues, and damage to its franchise system and the businesses of its active franchisees in the Territory.

57.     As a direct and proximate result of Defendants' breach of Sections 10(A) and 19(D), HVA has suffered and continues to suffer additional damages, including but not limited to: (i) the loss of the competitive advantage and exclusivity of its Confidential Information and trade secrets; (ii) damages arising from Defendants' use of HVA's proprietary customer lists and lead data to divert business from HVA and its active franchisees in the Territory; (iii) harm to HVA's franchise system caused by the unauthorized exploitation of HVA's proprietary methods, valuation tools, and operational

know-how; and (iv) costs and expenses incurred in protecting its Confidential Information and trade secrets from further unauthorized use.

58.     HVA is entitled to: (a) a preliminary and permanent injunction enjoining Defendants from further owning, operating, or engaging in the Competitive Business in violation of Section 10(C)(a); (b) a mandatory injunction compelling Defendants to immediately cease all use of HVA's Confidential Information in connection with iBuyKC LLC or any other Competitive Business and to destroy or return all materials, records, and data constituting or derived from HVA's Confidential Information; (c) compensatory damages for all losses caused by Defendants' breach of the non-compete covenant and the confidentiality covenants; (d) pursuant to the carve-out in Section 21(J) of the Agreement, punitive or exemplary damages arising from Defendants' unauthorized use of HVA's Confidential Information; and (e) attorneys' fees and costs.

### COUNT IV - BREACH OF CONTRACT (DIVERSION OF BUSINESS -- SECTION 10(C)(b))

### Against All Defendants

59.     HVA realleges and incorporates by reference all preceding paragraphs.

60.     Section 10(C)(b) of the Agreement prohibits Defendants from diverting or attempting to divert, directly or indirectly, any business, business opportunity, or customer of the HomeVestors Business to any Competitive Business.

61.     Defendants have breached and continue to breach Section 10(C)(b) by operating iBuy KC within HVA's active franchise territories, thereby diverting or attempting to divert business, business opportunities, and customers from HVA's franchisees.

17

62.     Additionally, Peterson's submission of a false lead to HVA's buy line constitutes deliberate interference with HVA's lead distribution system and a willful attempt to divert resources and disrupt HVA's operations, causing HVA actual monetary damages.

63.     As a direct and proximate result of Defendants' breach, HVA has suffered and continues to suffer damages.

## COUNT V - BREACH OF CONTRACT (PROHIBITED USE OF LICENSED MARKS AND IDENTITY – SECTION 19(C)(1))

### Against All Defendants

64.     HVA realleges and incorporates by reference all preceding paragraphs.

65.     Section 19(C)(1) of the Agreement expressly prohibits Defendants from, directly or indirectly, at any time or in any manner, identifying themselves or any business as a current or former HomeVestors Business or as one of HVA's franchisees, using any Licensed Mark or any colorable imitation thereof, or using any trade name or commercial symbol that suggests or indicates a connection or association with HVA.

66.     Defendants have breached and continue to breach Section 19(C)(1) by:

(a)     Identifying iBuy KC as "formerly HomeVestors" in at least one publicly available Google review;

(b)     Advertising on the Website that iBuy KC has been providing services "for years" and "Trusted by Kansas City Homeowners Since 2019" -- a period during which Defendants operated exclusively as HVA franchisees under HVA's Licensed Marks -- thereby creating a false and misleading association between iBuy KC and HVA's System and goodwill; and

(c)    Otherwise using indicia of a connection or association with HVA's System and Licensed Marks in connection with the operation of iBuy KC.

67.    As a direct and proximate result of Defendants' breach, HVA has suffered and continues to suffer irreparable harm to its Licensed Marks and goodwill.

## COUNT VI - BREACH OF CONTRACT (KEYWORD BIDDING – SECTION 10(C)(e))

### Against All Defendants

68.    HVA realleges and incorporates by reference all preceding paragraphs.

69.    Section 10(C)(e) of the Agreement prohibits Defendants from bidding on any of HVA's Licensed Marks as "exact match," "broad match," or "phrase match" search terms in any keyword advertising and requires Defendants to list each Licensed Mark as a negative keyword in all keyword advertising campaigns.

70.    Upon information and belief, Defendants have violated and continue to violate Section 10(C)(e) by purchasing HVA's Licensed Marks as keyword search terms for internet search engine advertising purposes.

71.    As a direct and proximate result of Defendants' breach, HVA has suffered damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff HomeVestors of America, Inc. respectfully requests that this Court enter judgment in its favor and against Defendants, and award the following relief:

A.    A preliminary and permanent injunction enjoining Defendants, and all persons acting in concert with them, from:

(1)      Owning, operating, maintaining, engaging in, or having any financial or beneficial interest in iBuyKC LLC, d/b/a iBuy KC, or any other Competitive Business (as defined in Section 10(B) of the Agreement) operating within the Territory or any adjacent counties, or within any territory then operated by or under development by HVA or its franchisees, through February 27, 2028 (or through such later date as the Court may order pursuant to the tolling provision of Section 10(C) of the Agreement);

(2)      Diverting or attempting to divert, directly or indirectly, any business, business opportunity, or customer from HVA or its franchisees;

(3)      Identifying themselves, iBuyKC LLC, or any other business as a current or former HomeVestors Business or franchisee, or using any Licensed Mark, colorable imitation thereof, or other indicia of a HomeVestors Business in any manner, including in internet reviews, websites, social media, and all other platforms;

(4)      Advertising on any platform that iBuy KC has been serving Kansas City homeowners since 2019 or for any other period of time that includes the period of Defendants' HVA franchise;

(5)      Bidding on or purchasing any of HVA's Licensed Marks as search keywords in any form, and compelling Defendants to add all Licensed Marks as negative keywords in any active keyword advertising campaigns;

(6)      Submitting false leads to HVA's buy line or otherwise interfering with HVA's lead distribution system;

B.      An order that the two-year non-compete period set forth in Section 10(C) of the Agreement shall commence from the date of entry of this Court's order, pursuant to the tolling provision thereof, given Defendants' refusal to voluntarily comply;

C.      Compensatory damages in an amount to be proven at trial, including damages for:

(1)      Business diverted from HVA's active franchisees in the Territory;

(2)      Losses from HVA's advertising budget caused by Defendants' submission of a false lead;

(3)      Harm to HVA's Licensed Marks and goodwill;

(4)      All other actual damages flowing from Defendants' breaches;

20

D.    An accounting of all revenues and profits derived by Defendants from the operation of iBuyKC LLC, d/b/a iBuy KC, from February 27, 2026, to the date of judgment;

E.    Defendants' profits attributable to trademark infringement pursuant to 15 U.S.C. § 1117;

F.    Punitive damages pursuant to the carve-out in Section 21(J) of the Agreement for unauthorized use of the Licensed Marks and Confidential Information;

G.    Prejudgment and post-judgment interest;

H.    Attorneys' fees and costs pursuant to Section 21(C) of the Agreement, 15 U.S.C. § 1117 and Tex.Civ.Prac. & Rem.Code § 38.001(8) (Vernon 1986);

I.    Such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands trial by jury on all issues so triable.

Respectfully Submitted

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Brandan Montminy*
Brandan Montminy
Texas Bar No. 24088080
2200 Ross Ave., Suite 2800
Dallas, TX 75201
Telephone: 214.740.8445
Email: brandan.montminy@troutman.com

A. Christopher Young
(*Pro Hac Vice* Motion Forthcoming)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
Telephone:  215.981.4190
Email:  christopher.young@troutman.com

*Attorneys for Plaintiff HomeVestors of America, Inc.*